101 F.3d 703
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Ernest WINKELMAN, Defendant-Appellant.
 No. 96-5365.
 United States Court of Appeals, Sixth Circuit.
 Nov. 15, 1996.
 
 Before: KEITH, SILER, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 David Winkelman appeals his convictions for obstruction of justice and aiding and abetting the obstruction of justice, challenging both the admission of testimony regarding polygraph examinations and the sufficiency of the evidence in support of the convictions. For the following reasons we AFFIRM the decision of the district court.
 
 I. Facts and Procedural History
 
 2
 In March 1995, William Jones, a convicted felon, arrived at the Cincinnati/Northern Kentucky International Airport on a flight from El Paso, Texas. After exiting the plane, Jones was approached by members of the Narcotics Interdiction Unit, one of whom asked Jones for permission to search his duffel bag. Jones consented to the search and the officer found a loaded Taurus .38 caliber semi-automatic handgun.
 
 
 3
 A federal grand jury subsequently indicted Jones for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Shortly after his indictment, Jones passed two polygraph examinations which indicated that he had no knowledge of the firearm in his duffel bag. Based upon these examinations, and Jones's cooperation with the authorities, the government dismissed the weapons charge.
 
 
 4
 On the day of Jones's indictment, Clermont County Deputy Sheriff William Williams approached an associate of Jones, Shaun Christoff, seeking his cooperation in a drug investigation unrelated to Jones's weapons charge. Williams told Christoff that, although Christoff was in a great deal of trouble, he could avoid prosecution if he agreed to cooperate. Christoff agreed, and the ensuing conversation revealed that Jones and Ernest "Butch" Winkelman had asked Christoff to provide an explanation for the presence of the firearm found in Jones's luggage. Essentially, Jones and Winkelman told Christoff to testify that the firearm was his and that he accidently placed it in Jones's bag.
 
 
 5
 Upon Williams's request, Christoff subsequently recorded various conversations, both over the phone and face-to-face, involving Jones and Winkelman. The recordings revealed a plan by Jones and Winkelman to concoct a story that Christoff would tell authorities in support of Jones's assertion that Jones did not know that the gun was in his bag. Winkelman paid Christoff to secure his false testimony.
 
 
 6
 Based on the foregoing, Winkelman and Jones were named in a two-count indictment charging them with conspiracy to obstruct justice in violation of 18 U.S.C. § 371 and with aiding and abetting each other to obstruct justice in violation of 18 U.S.C. §§ 1502 and 1503. Jones pleaded guilty to count one and was sentenced accordingly. Winkelman proceeded to trial, where the jury found him guilty on both counts.
 
 II. Discussion
 A. Polygraph Evidence
 
 7
 At Winkelman's trial the government called three witnesses: Williams, Christoff, and Jones. During cross-examination, defense counsel asked Williams whether the government had dismissed the weapons charge against Jones, and, if so, why it had done so. Specifically, defense counsel asked Williams if there was "independent, extraneous evidence" that Jones was not guilty of the weapons charge. On redirect, the government followed up on this line of questioning and Williams explained that the government decided to dismiss the charges because Jones had passed two polygraph tests and fully cooperated with the authorities.
 
 
 8
 Winkelman objected to Williams's reference to the polygraph tests. The district court overruled the objection, stating that the polygraph examinations explained the decision to dismiss Jones's weapons charge, an issue which defense counsel had raised. The court then instructed the jury regarding the limited purpose for which they could consider the polygraph evidence.
 
 
 9
 The polygraph tests were mentioned a second time during the government's direct examination of Jones. When the government asked Jones to explain the circumstances that led to Winkelman's prosecution, Jones recounted the events which transpired in the Cincinnati airport and further stated that he did not know that the gun was in his duffel bag. It was in regard to the latter that Jones referred to his passing two polygraph tests.
 
 
 10
 Winkelman objected to Jones's answer. The district court, once again, overruled the objection and instructed the jury on the relevance of the polygraph evidence.
 
 
 11
 On appeal, Winkelman argues that the district court abused its discretion when it allowed the government's witnesses to refer to the polygraph tests.
 
 
 12
 The decision regarding the admissibility of a polygraph examination is within the sound discretion of the trial court. United States v. Blakeney, 942 F.2d 1001, 1014 (6th Cir.1991), cert. denied, 502 U.S. 1035 (1992). We review this for an abuse of discretion. United States v. Carter, 969 F.2d 197, 200 (6th Cir.1992).
 
 
 13
 Ordinarily, results of a polygraph examination are inadmissible as evidence. See United States v. Barger, 931 F.2d 359, 370 (6th Cir.1991). "However, there are some circumstances under which polygraph evidence may be admissible." United States v. Weiner, 988 F.2d 629, 633 (6th Cir.), cert. denied, 510 U.S. 848 (1993). Winkelman's case presents just such circumstances.
 
 
 14
 The first reference to Jones's polygraph examinations occurred during the government's redirect examination of Williams. The government did not elicit the polygraph evidence to prove Jones's veracity, "but because [Winkelman] had opened the door for an explanation of the government's conduct in" dismissing the weapons charge. Id. After admitting the evidence through the door originally opened by Winkelman, the district court properly instructed the jury that the polygraph examination was relevant only to the decision to dismiss the weapons charge, and could not be considered by the jury in evaluating Jones's testimony at trial.
 
 
 15
 "This circuit has developed a two-step analysis when considering the admissibility of polygraph evidence. First, the evidence must be relevant; second, its probative value must outweigh the risk of unfair prejudice." Barger, 931 F.2d at 370. Winkelman put the government's reasons for dismissing the weapons charge at issue, thus making the polygraph evidence relevant. See id. In light of the evidence's purpose and the limiting instruction, we hold that the danger of unfair prejudice from the evidence does not substantially outweigh the probative value. We therefore hold that the district court did not abuse its discretion in admitting Williams's reference to the polygraph examinations.
 
 
 16
 Jones's testimony regarding the results of his polygraph examinations resulted from his narrative about the facts giving rise to Winkelman's prosecution, and were not offered in response to an evidentiary door opened by Winkelman. We will therefore focus on the district court's curative instruction to the jury.
 
 
 17
 Our sister circuit has previously stated, and we have adopted, the following nonconstitutional error test for situations such as Winkelman's:
 
 
 18
 The most important questions to consider in determining whether a curative instruction or a mistrial is appropriate after a reference to a polygraph test are these: (1) whether an inference about the result of the test may be critical in assessing the witness's credibility, and (2) whether the witness's credibility is vital to the case.
 
 
 19
 United States v. Brevard, 739 F.2d 180, 182 (4th Cir.1984), adopted in, United States v. Walton, 908 F.2d 1289, 1294 (6th Cir.), cert. denied, 498 U.S. 990 (1990).
 
 
 20
 While an inference from the result of the polygraph examinations may have impacted the jury's assessment of Jones's credibility, we find that his credibility was not vital to this case. The evidence against Winkelman was neither conjectural nor circumstantial. Christoff's testimony, together with the tape recordings of Winkelman's conversations, supports the government's case independent of Jones's testimony. Not only was Jones's credibility not vital to the case, his testimony was not vital in light of the other evidence presented. Accordingly, we affirm the district court on this issue.
 
 B. Sufficiency of the Evidence
 
 21
 Winkelman also alleges that the evidence produced at trial was insufficient to support his convictions. "The relevant inquiry when reviewing claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Blakeney, 942 F.2d 1001, 1010 (6th Cir.1991), cert. denied, 502 U.S. 1035 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 22
 After a thorough review of the record, and in light of our foregoing discussion, we believe that a rational trier of fact could have found the essential elements of Winkelman's crimes beyond a reasonable doubt.
 
 
 23
 Accordingly, the judgment of the district court is AFFIRMED.