OPINION OF THE COURT
VAN ANTWERPEN, Circuit Judge.
Appellant Earl Thomas filed a § 1983 claim against prison officials, alleging they were deliberately indifferent to a denial of medical treatment by prison doctors for his medical needs during his incarceration at SCI-Mahanoy, a Pennsylvania correctional facility, from September 1996 until February 1998. Thomas, who has hepatitis, seeks a new trial on the grounds that the District Court abused its discretion in excluding as irrelevant several of his trial exhibits pursuant to Federal Rules of Evidence 401 and 402. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.
I.
Defendants in this case are Prison Superintendent Martin Dragovich and a prison health care administrator, Marva Cerullo.[1] Thomas’ theory of liability is that Cerullo and Dragovich did nothing to assist Thomas despite allegedly knowing of refusals by prison medical staff to treat Thomas’ hepatitis and, alternatively, of staffs prescription to him of contraindicated medicine. As a result, Thomas alleges, he suffered pain in his right side from lack of treatment. Prior to trial, Thomas marked as exhibits contemporaneous grievance forms that he had written to Cerullo and other staff stating his belief that (i) prison doctors and the medical staff were not treating his hepatitis and related pain; (ii) the medicines that the medical staff did provide him for his pain — at various times, aspirin, Tylenol and Motrin — were inappropriate and contraindicated for hepatitis; and (iii) the Defendants knew this, but did nothing. Space at the bottom of each form allows administrative staff to respond to inmates’ grievances. Most but not all of Thomas’ exhibits contain brief responses or comments written by Cerullo or other administrative staff.
Prior to trial, Defendants moved in limine to exclude all of Thomas’ exhibits as irrelevant. The District Court initially granted the motion as to some twenty of *35 Thomas’ exhibits. Upon Thomas’ motion for reconsideration, the District Court admitted three more of them for use in his case-in-chief and another eleven for impeachment, cross-examination, and rebuttal purposes.
The exhibits that were excluded in their entirety and/or limited in their admissibility to impeachment span a period of several months. They memorialize a range of complaints by Thomas, including his allegation that medical staff refused to either see him or treat him on specific dates; that medical staff had prescribed Tylenol and aspirin to him even though both are contraindicated for persons with hepatitis; and that he was experiencing pain on his right side. See, e.g., Exhibit 16 (“The doctor told me that I am not suppose[d] to take these medicine[s] because I have hepatitis. It is making my liver wors[e]. My right side is hurting now.”). As discussed, many of these exhibits also memorialized handwritten comments from Defendant Cerullo and other administrative staff. See, e.g., Exhibit 35 (“If you don’t want the Motrin don’t take it.”).
At the conclusion of a three-day trial, a jury found in favor of both Defendants, concluding by special verdict that while Thomas had proven he had a serious illness and that both Defendants were aware of his serious need for medical care, he had not proven their deliberate indifference to his claimed lack of treatment. Thomas subsequently moved for a new trial, arguing the District Court had erred by excluding his exhibits, which he claimed were relevant to the issue of whether the Defendants had in fact been deliberately indifferent. The District Court denied the motion. This appeal followed.
II.
We review a district court’s evidentiary determinations for an abuse of discretion. See Renda v. King, 347 F.3d 550, 553 (3d Cir.2003) (holding that an abuse of discretion standard applies to evidentiary rulings involving applications of the Federal Rules of Evidence); see also Glass v. Philadelphia Elec. Co., 34 F.3d 188 (3d Cir.1994). We also review for an abuse of discretion the District Court’s denial of Thomas’ motion for a new trial. See, e.g., Pryer v. Slavic, 251 F.3d 448, 453 (3d Cir.2001). Finally, where a district court erroneously excludes evidence at trial, we may affirm a jury’s verdict only if the evidentiary error was harmless. Renda, 347 F.3d at 356. An evidentiary error is harmless only if “ ‘it is highly probable that the error did not contribute to the judgment.’ ” United States v. Davis, 183 F.3d 231, 255 (3d Cir.1999) (quoting Murray v. United of Omaha Life Ins. Co., 145 F.3d 143, 156 (3d Cir.1998)).
III.
Here, Thomas has pursued claims against administrative Defendants who are neither prison doctors nor on the prison’s medical staff. Thomas alleges that they were deliberately indifferent not because they themselves denied Thomas medical attention, but because they had knowledge of a denial, yet failed to respond to his repeated requests for assistance.
The following brief summary of our deliberate indifference jurisprudence frames the question of evidentiary relevance before us in this appeal. In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court confirmed that the government has an “obligation to provide medical care for those whom it is punishing by incarceration” and determined that “deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.” Estelle, 429 U.S. at 103, 104, 97 *36 S.Ct. 285 (citations and internal quotation marks omitted). The Estelle Court also determined that deliberate indifference may be manifested by “intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.” Id. at 104-05, 97 S.Ct. 285; see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999) (reiterating that deliberate indifference may be demonstrated by denying, delaying or preventing a prisoner from receiving needed or recommended medical treatment).
The Court in Estelle also instructed, however, that mere negligence does not violate the Eighth Amendment. Id. at 106, 97 S.Ct. 285. As a result, decisions by prison medical staff relating to the exercise of professional judgment, even though they may constitute medical malpractice, are not violative of the Eighth Amendment. Id. at 107, 97 S.Ct. 285; see also Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (reiterating Estelle’s distinction between deliberate indifference to serious medical needs and “mere negligence”); Durmer v. O’Carroll, 991 F.2d 64, 67 (3d Cir.1993) (acknowledging that a deliberate indifference claim requires that a prisoner demonstrate “more than negligence”). Similarly, and of particular importance in this case, “mere disagreement as to the proper medical treatment” is likewise insufficient to establish a Constitutional violation. Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977); Massey v. Hutto, 545 F.2d 45, 46 (8th Cir.1976) (per curiam)).
In Farmer, the Court explained that the term “deliberate indifference” lies “somewhere between the poles of negligence at one end and purpose or knowledge at the other.” 511 U.S. at 836, 114 S.Ct. 1970. The Court instructed that
a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; that is, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
511 U.S. at 837, 114 S.Ct. 1970. Thus, to demonstrate a prima facie case of cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted “with deliberate indifference to his or her serious medical needs.” Estelle, 429 U.S. at 104, 97 S.Ct. 285; Durmer, 991 F.2d at 67. There are two components to this standard: First, a plaintiff must make an “objective” showing that the deprivation was “sufficiently serious,” or that the result of the defendant’s denial was sufficiently serious. Additionally, the plaintiff must make a “subjective” showing that defendant acted with “a sufficiently culpable state of mind.” Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir.2002). As such, we explained in Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.2004), that the Estelle “deliberate indifference to serious medical needs” standard is clearly met when a doctor is “intentionally inflicting pain on [a] prisoner[ ],” 897 F.2d at 109. And in Monmouth, we identified several other scenarios that satisfy Estelle, including “[w]here prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury,” Monmouth, 834 F.2d at 346 (internal quotation omitted), or “where ‘knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care.’ ” Id. (in *37 ternal quotation omitted) (alteration in original).
As we have stated, Thomas’ claim is against administrative Defendants who are not prison doctors or medical staff. Thomas alleges that Defendants were deliberately indifferent not because they themselves denied Thomas medical attention, but because they knew of a denial yet failed to help. Given the theory of liability advanced by Thomas, one facet of our deliberate indifference jurisprudence remains to be discussed: the relationship between an alleged denial of medical care and an administrator’s — as opposed to a doctor’s or medical staff member’s — alleged deliberate indifference to that possibility.
In previous cases, we have we concluded that such administrators could not be deliberately indifferent “simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.” Durmer, 991 F.2d at 69. As we later explained in Spruill, “[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.” Spruill, 372 F.3d at 236 (discussing Durmer, 991 F.2d at 69). We further concluded in Spruill that “absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.” Id. at 236.
IV.
With these governing standards of deliberate indifference in mind, we turn to Thomas’ contention on appeal that all of his grievance exhibits were relevant. Rule 401 of the Federal Rules of Evidence defines relevant evidence as anything “having tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Fed.R.Evid. 401. As may be seen from this language, the threshold for relevance is low. Taken in combination with the fact that Thomas’ contested exhibits each contemporaneously memorialize either (i) his perceptions as to treatment and medication, (ii) the administrative staffs awareness and responses to those perceptions, or (iii) both, the low threshold for relevance established by Rule 401 causes us to assume in this appeal that all of Thomas’ exhibits were relevant to his claim of deliberate indifference against the Defendants. Indeed, counsel for Defendants conceded as much at oral argument, and to reach a contrary conclusion would seem almost impossible. Each of Thomas’ contested exhibits plainly tends to make the existence of facts of consequence to his claim either more probable or less probable than they would otherwise be without this evidence. See Fed.R.Evid. 401.
The District Court also appears to have excluded the exhibits because they were “self-serving.” But Thomas’ proposed exhibits were contemporaneous communications that reflected the information that was available to the defendants and, in some cases, their responses to it. Because Thomas sought to introduce them to show notice to defendants, i.e., their state-of-mind, the documents were not barred as hearsay. The mere fact that many of the letters were written by Thomas and allegedly favorable to his case did not justify exclusion either, so long as the documents were relevant. In any event, since the authenticity of the documents is not at issue, and since defendants would have had the opportunity to cross-examine Thomas *38 on the content of the letters, the central concerns usually raised by “self-serving evidence” do not apply.
V.
Our analysis does not end with the question of relevance, however, as we must ask whether the error requires reversal. Under the Federal Rules of Evidence, a district court’s evidentiary rulings do not constitute reversible error “unless a substantial right of a party is affected.” Fed. R.Evid. 103(a). “Under this test, a reviewing court should affirm the District Court despite the error if the reviewing court believes ‘that it is highly probable that the error did not contribute to the judgment. ...’” Renda v. King, 347 F.3d 550, 556 (3d Cir.2003) (citing McQueeney v. Wilmington Trust Co., 779 F.2d 916, 924 (3d Cir.1985) (internal citation omitted) (emphasis in original)). For each of the following two reasons, we conclude that it is highly probable that the District Court’s error did not contribute to the jury verdict in favor of the Defendants.
First, at trial, in addition to his own testimony, Thomas presented the testimony of an expert in gastroenterology and hematology as well as that of a doctor who treated Thomas for hepatitis after he was transferred to another correctional facility, SCI-Greensburg. Defendants, in turn, presented their own testimony, the testimony of Thomas’ treating physician at SCI-Mahanoy, and the expert testimony of the Assistant Medical Director for the state of Pennsylvania. It was undisputed from all of this testimony that Thomas was seen regularly, if not frequently, by the prison doctor and medical staff; that he was given blood tests on a regular basis to monitor his liver functions; and that Thomas’ blood tests, although elevated, remained stable. It was further undisputed from the testimony that the prison doctor and medical staff had also treated Thomas on an on-going basis by placing him on a low fat diet, providing him with vitamins, and by administering several varieties of pain medicine, including aspirin, Tylenol and Motrin. As to the pain medicine, it was also undisputed that Thomas was advised that these medicines were contraindicated for persons with hepatitis and thus were only for short-term use. The record shows a dispute existed only as to the standard of care for hepatitis, specifically, whether the prison doctor should have also prescribed to Thomas the drug Interferon, which Thomas requested and which was available, although apparently not normally dispensed, at SCI-Mahanoy.
Thomas’ contested exhibits do not undercut or impeach any Defendant’s testimony, nor do they undercut or impeach the critical fact that Thomas was seen by doctors and was receiving medical treatment. The evidentiary value of Thomas’ contested exhibits is thus negligible, and therefore all but dispositive to the critical question of whether “it is highly probable that the error did not contribute to the judgment.” Renda, 347 F.3d at 556. At most, they show only that Thomas did not like the treatment he was receiving, that he still had some pain, and that he still had concerns about the over-the-counter pain medicines he was given.
Second, Thomas’ contested exhibits provided Thomas no net gain in evidentiary value: for every contested exhibit containing evidence tending to support Thomas’ theory of liability, another one of his exhibits tended to undercut it, in favor of Defendants. Because the jury was not in any different position than it would have been had it seen all of Thomas’ exhibits, there exists a high probability that the error therefore did not contribute to the judgment. Id. Here, our conclusion is formed not only by our review of the contested *39 exhibits, but also by the legal standards necessary to support a claim for deliberate indifference in the scenario presented by Thomas’ theory of liability here. Thomas’ contested exhibits do not tend to show that Defendants Dragovich and Cerullo, who are undisputably administrators, not doctors, possessed “ ‘knowledge of the need for medical care [accompanied by the] ... intentional refusal to provide that care.’ ” Id. (internal quotation omitted). Thomas’ exhibits only confirm that Cerullo had a belief that Thomas was under the care of the prison doctor and medical staff, placing her within the scope of our decision in Spruill, 372 F.3d at 236 (“If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.”). Thomas’ contested exhibits provide no new support that either Cerullo or Dragovich possessed actual knowledge or a reason to believe that “prison doctors or their assistants [were] mistreating (or not treating) [Thomas].” See id. at 236. Finally, as to Cerullo’s responses to Thomas that were memorialized in the contested exhibits, the jury could not have found that she did anything more than “fail[ ] to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.” Durmer, 991 F.2d at 69. As counsel contended at oral argument, it appears true that Cerullo could have been more helpful to Thomas by undertaking such actions as forwarding some of Thomas’ grievance forms to the medical staff or doctors, or even speaking with them directly, to make sure Thomas was heard. That said, a failure to undertake such actions or others like them does not constitute deliberate indifference, and may not be legally recognized as such. Id.
For both of these reasons, we conclude that it was highly probable that the District Court’s evidentiary ruling did not contribute to the judgment.
VI.
We have considered the remaining arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the jury verdict and the order of the District Court denying Thomas’ motion for a new trial are affirmed.

. Thomas does not challenge on appeal the District Court's grant of summary judgment as to the other defendants originally named in this action, Thomas Hornuing and George Stradtman, whom the District Court found lacked personal involvement in the alleged denial of medical treatment for Thomas' hepatitis.