UNITED STATES of America

v.

John J. HAMILTON, Jr., Defendant.

Criminal No. 05–876 (JLL).

United States District Court,
D. New Jersey.

Sept. 28, 2008.

Joyce M. Malliet, United States Attorney's Office, Newark, NJ, for Plaintiff.

## OPINION

LINARES, District Judge.

The United States of America ("Government") filed an Indictment against defendants John J. Hamilton Jr. ("Hamilton" or "Defendant") and Vincent "Vinny" Baker ("Baker") on December 12, 2005 and followed up with a Superceding Indictment on November 6, 2006. The Superceding Indictment charged defendants Hamilton and Baker with conspiracy and attempted extortion in violation of the Hobbs Act, 18 U.S.C. § 1951(a), (Counts One and Two, respectively) and bribery in violation of 18 U.S.C. § 666 (Count Three). Additionally, the Government set out charges against defendant Hamilton of making false statements to a federal agent in violation of 18 U.S.C. §§ 1001 and 2 (Count Five) and attempted witness tampering in violation of 18 U.S.C. §§ 1512(b)(3) and 2 (Count Six). On September 7, 2007, defendant Baker entered into a plea agreement with the Government. Hamilton proceeded to trial on November 13, 2007, and on November 21, 2007, this Court declared a mistrial. The second trial against Mr. Hamilton regarding the above-referenced counts is scheduled to proceed on September 29, 2008.

On May 13, 2008, the Government filed several pre-trial Hamilton's upcoming re-trial. Defendant filed opposition on August 22, 2008, and the Government replied on August 26, 2008. This Court resolved many of the issues in a September 22, 2008 Order (Docket No. 107), but reserved as to the Government's motion to preclude testimony regarding Hamilton's two offers to take a polygraph test (Docket No. 90). Having reviewed the submissions and having heard oral argument, the Court grants in part and denies in part the Government's motion.

## I. Facts

During Hamilton's first trial, defense counsel elicited the following testimony from Government witness and FBI Agent Bruce Kamerman.

Q. Okay. Now, when you spoke to Mr. Hamilton, did the subject of a polygraph ever come up?

Mr. Eicher (Ass't United States Attorney): Objection.

The Court: No, I will allow it.

A. At one portion of the interview, Mr. Baker—Mr. Hamilton denied any wrongdoing and stated that he would be willing to take a polygraph.

Q. Okay. Did you give him one.

A. I am not a—I am not trained in conducting polygraph tests, so, no, I did not give him a polygraph.

Q. Did anybody?

A. I am unaware of a polygraph being given.

Mr. Eicher: I renew my objection and move to strike the whole line of questioning on the grounds that counsel knows full well—

The Court: The objection is well taken. Sustained. You will disregard the last statement, did you try to give him one or not. That is not a call made by him anyway.

Nov. 16, 2007 Tr. at 6.77, 5–24. The above-referenced interview took place on November 22, 2005 at Mr. Hamilton's house after the FBI had arrested him. Aside from FBI agents and Mr. Hamilton, no one else was present during the interview.

During oral argument, the Government advised the Court that Mr. Hamilton also offered to take a polygraph test during a November 11, 2002 interview at his house. Sept. 17, 2008 Tr. 55:15–56:9. That inter-

view also occurred outside the presence of counsel. However, references to this offer to take a polygraph did not arise during Hamilton's first trial. The Government now moves to preclude Hamilton from eliciting testimony referencing either of his two offers to take a polygraph.[1]

## II. Legal Discussion

■ The Third Circuit has not adopted a *per se* exclusionary rule regarding admissibility of the results of polygraph examinations. *Nawrocki v. Twp. of Coolbaugh*, 34 Fed.Appx. 832, 838 (3d Cir. 2002); *United States v. Lee*, 315 F.3d 206, 214 (3d Cir.2003). And while the Third Circuit has yet to opine on the admissibility into evidence of an *offer* to take a polygraph test, other circuit courts have placed the question squarely within the province of the district court's discretion. *See, e.g., United States v. Harris*, 9 F.3d 493, 501–02 (6th Cir.1993) (citing *Wolfel v. Holbrook*, 823 F.2d 970, 972) (6th Cir.1987) ("In limited circumstances, evidence of a party's willingness to submit to a polygraph may, within the discretion of a trial court, become admissible if it is relevant at trial"); *United States v. Elekwachi*, 111 F.3d 139, 1997 WL 174160 at *1 n. 1 (9th Cir.1997) ("the decision of whether to admit polygraph evidence remains discretionary with the trial court.") In the absence of Third Circuit guidance on the issue, this Court exercises its discretion with respect to the admissibility of an offer to take a polygraph test by following the two-step analysis enunciated by the Sixth Circuit—first, determine whether the evidence is relevant under Federal Rule of Evidence 401, and second, conduct the probative versus unfair prejudice balancing test mandated by Federal Rule of Evidence 403.

*Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273, 277 (6th Cir.1985).

### A. Rule 401

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. As the language indicates, the "threshold for relevance is low." *Thomas v. Dragovich*, 142 Fed.Appx. 33, 37 (3d Cir.2005); *see also United States v. Paz*, 124 Fed.Appx. 743, 746 (3d Cir.2005) ("[R]elevance is not a difficult condition to satisfy under the Federal Rules of Evidence.")

■ Count Five of the Superceding Indictment charges Hamilton with "knowingly and willfully mak[ing] a false, fictitious, and fraudulent statement and representation" to the F.B.I. on November 11, 2002, in violation of 18 U.S.C. § 1001. Superceding Indictment, Count Five at ¶ 3. Hamilton argues that the proffered evidence is directly probative of, and relevant to, his state of mind during that interview with Agent Kamerman. Thus, he argues that his offers to undergo a polygraph test—during both the 2002 and 2005 interviews—implicate his consciousness of innocence. They make the fact of whether he acted knowingly less probable that it would be otherwise.

The Government argues that any probative value as to Hamilton's state of mind is diminished significantly—if not altogether eliminated—by the self-serving nature of his offer to take a polygraph. For an offer to be self-serving, however, the offeror must be aware of the consequences of his

1. The Government's initial pretrial motion only referenced Mr. Hamilton's November 22, 2005 offer to take a polygraph. During oral argument, the Government revealed the additional 2002 interview in which he made the same offer. Thus, the Court reads the present motion as seeking to preclude any mention of either offer.

actions. Thus, with regard to a polygraph, a defendant must know that polygraph results are generally inadmissible in federal court, *United States v. Zhang,* No. CR 98–425, 1999 WL 61416 at \* 10 n. 6 (D.N.J. Feb.8, 1999), and that offering to take one is inherently a "no-lose" proposition. Only then can the offer itself be self-serving. Thus,

> [A] guilty defendant could make such offer knowing (1) the government is unlikely to accept his offer and, if they decline, he can attempt to introduce evidence of his offer as consciousness of innocence, or (2) if the government agrees to his offer and he fails the polygraph test, the results are still inadmissible.

*United States v. Graziano,* 558 F.Supp.2d 304, 325–326 (E.D.N.Y.2008). In most of the cases cited by the Government, including Judge Bianco's recent decision in *Graziano,* a defendant offers to take a polygraph upon the advice of, or in the presence of, counsel. In each case, the presence of counsel immediately calls into question the authenticity of the defendant's offer, thereby undermining its probative value. *See, e.g., United States v. Harris,* 9 F.3d 493, 502 (6th Cir.1993) (defendant's "willingness to submit to polygraph testing, *in the presence of an attorney,* was marginally relevant at best ...")(emphasis added); *Graziano,* 558 F.Supp.2d at 325–26 (finding that defendant offered to take a polygraph during a proffer session with the government held little probative value because of the presence of counsel and the resulting lack of "adverse consequences"). Thus, the defendant's offer to take a polygraph is inherently self-serving because the defendant *knows* that no adverse consequences will result from making the offer. In that scenario, the offer itself clearly sheds no

light at all upon the defendant's actual state of mind.

Not so here. Hamilton's November 11, 2002 interview occurred *before* he had obtained counsel. Without the presence of counsel, Hamilton had no way of knowing whether or not his offer would be accepted nor whether it would be admissible in a future court proceeding. Thus, Hamilton's offer was unencumbered by the usual attorney advice that hinders the admissibility of most such offers. As such, his offer to take a polygraph during the 2002 interview is highly probative of his consciousness of innocence—it directly implicates Count Five of the Superceding Indictment.

The same, however, does not hold true with regard to the 2005 interview. As an initial matter, Hamilton's state of mind on November 22, 2005 holds minimal probative value as to whether or not he lied to the FBI three years earlier, on November 11, 2002. Moreover, even that minimal probative value is substantially diminished by the surrounding facts—Hamilton had three years between interviews during which he knew that he was the target of an investigation and during which he likely spoke to an attorney to seek advice as to any potential charges that he might face. Thus, this second offer to take a polygraph is irrelevant to whether he lied in 2002 and it is more likely to have been the by-product of advice from counsel, thereby implicating the self-serving concerns enunciated in *Graziano.*

Finally, the Government asks this Court to consider three related factors that allegedly delineate the lack of adverse consequences associated with Hamilton's polygraph offers (1) Hamilton never stipulated to the polygraph's admissibility; (2) Hamilton could have withdrawn his offer at any point with no repercussions; and (3) there was no imminent possibility of a polygraph being taken.[2] Indeed, many courts have

---

**2.** Having already found the November 22,  2005 offer to take a polygraph to be irrele-

found that absent a stipulation regarding admissibility, the results of a polygraph test cannot be put before a jury. *See, e.g., United States v. Piccinonna,* 885 F.2d 1529 (11th Cir.1989) (allowed district court to admit polygraph evidence when the parties stipulate in advance as to the test's circumstances and scope of admissibility). In this case, however, the FBI never offered Hamilton the opportunity to consent to admissibility, because no agent ever took him up on his offer to take a polygraph. The Court declines to discredit Hamilton for "refusing" to stipulate to admissibility of a polygraph test when it is highly unlikely that he even knew he had that option.

As to the Government's final two contentions, neither holds water. The fact that Hamilton could have withdrawn his offer at any time is certainly true but it is inherently speculative and does not render his initial offer irrelevant. Finally, much like Hamilton's lack of knowledge as to the inadmissibility of polygraph results generally, he also had no way of knowing whether or not a polygraph test was imminent.

In sum, the inquiry into the relevance of Hamilton's offers necessarily requires a fact-intensive analysis. Even those courts that have excluded offers to take a polygraph have limited their decisions to the facts of the case. *See, e.g., Graziano,* 558 F.Supp.2d at 325–26 ("the court finds that this offer, under the circumstances of the case, has no probative value in the assessment of the defendant's state of mind.") Under the facts of this case—because Hamilton had not consulted an attorney and because he had no knowledge of the legal variables surrounding polygraph examinations—his November 11, 2002 offer to take a polygraph was not a strategic,

"no-lose", self-serving proposition. Rather, it is relevant to his state of mind during that interview with the FBI. His offer to take a polygraph during the November 22, 2005 interview, however, is not relevant to Count Five of the Superceding Indictment and is more likely to have been the byproduct of advice from counsel. Thus, the November 22, 2005 offer is inadmissible.

### B. Rule 403

■ Finding the offer to take a polygraph during the November 11, 2002 interview relevant, of course, does not end the inquiry. Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." Fed.R.Evid. 403. Thus, "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility." *Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1343 (3d Cir.2002). Finally, unfair prejudice "does not simply mean damage to the opponent's cause, but must be of the type which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found." *Goodman v. Pennsylvania Turnpike Comm'n,* 293 F.3d 655, 670 (3d Cir.2002) (internal citations omitted).

The potential for unfair prejudice associated with admission of the polygraph evidence is certainly high. A jury could reasonably infer that the FBI agent chose not to give Hamilton a polygraph test because he feared that the results of the test would help Hamilton's case. Speculating as to why the test was not given or as to what

vant, the Court only addresses the Government's additional considerations with respect

to the November 11, 2002 offer.

the results would have been had a test been given are exactly the types of imaginative leaps that could unfairly prejudice the Government's case. In *Graziano*, the court found that the "jury's inability to assess the weight to be given such testimony" because of its "lack of understanding about the numerous legal and practical variables that surround such an offer to take a polygraph" is enough to substantiate excluding the evidence. *Graziano*, 558 F.Supp.2d at 326.

■ Rather than precluding the evidence as per *Graziano*, however, this Court finds that a limiting instruction can cure any resulting unfair prejudice. *See United States v. Cohen*, 171 F.3d 796, 801 (3d Cir.1999) (proper limiting instruction can cure potential prejudicial effect); *United States v. Winkelman*, 101 F.3d 703, 1996 WL 665379 at *2 (6th Cir. Nov.15, 1996) ("In light of the evidence's purpose and the limiting instruction, we hold that the danger of unfair prejudice from the evidence does not substantially outweigh the probative value.") Juries are generally charged with understanding legal concepts that are far more complex than those associated with the offer to take a polygraph. A limiting instruction warning the jury to consider the evidence only as to Hamilton's state of mind is therefore precisely the right tool to excise any unfair prejudice associated with its admission. Taking guidance from the Third Circuit's Model Criminal Instruction 4.29, the Court shall make the following limiting instruction to the jury:

> You have heard testimony that the defendant offered to take a polygraph test during his interview with an FBI Agent. You may consider this evidence only for the limited purpose of deciding whether the defendant had the state of mind to commit the crime charged in Count Five of the Indictment, which charges the

defendant with knowingly and willfully making a false, fictitious, and fraudulent statement and representation to the F.B.I. on November 11, 2002. Do not consider this evidence for any other purpose. You should not consider the fact that a polygraph was not given to Mr. Hamilton and you should not attempt to figure out what the results of the polygraph would have been had one been given. You also should not speculate as to the reasons why the FBI declined to give Mr. Hamilton a polygraph. Rather, you should consider only the fact that Mr. Hamilton offered to take a polygraph and you should consider that fact only as it relates to his state of mind during the November 11, 2002 interview. Of course, it is for you to determine whether you believe the evidence, and if you do believe it, whether you accept it for the purpose offered. You may give it such weight as you feel it deserves, but only for the limited purpose that I described to you.

This instruction minimizes the risk of unfair prejudice to the Government because it clearly instructs the jury as to the proper value to be placed upon Hamilton's testimony.

## III. Conclusion

For the reasons set forth above, Hamilton's November 11, 2002 offer to take a polygraph is admissible pursuant to Federal Rules of Evidence 401 and 403. However, his identical November 22, 2005 offer is inadmissible under Rule 401. Thus, the Government's motion is **DENIED IN PART AND GRANTED IN PART.** An appropriate order accompanies this opinion.