

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2003

# Renda v. King

Precedential or Non-Precedential: Precedential

Docket No. 01-2421

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"Renda v. King" (2003). *2003 Decisions.* Paper 164.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/164

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed October 16, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos: 01-2421 and 01-2498

VALERIE RENDA

v.

PAUL KING;
DAVID B. KELSEY

Paul King,
    Appellant in Docket No. 01-2421

Valerie Renda,
    Appellant in Docket No. 01-2498

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 97-cv-00721)
District Judge: Honorable William L. Standish

Argued: May 2, 2002

Before: ROTH and STAPLETON, *Circuit Judges*
POLLAK,* *District Judge*

(Opinion filed: October 16, 2003)

---

* Honorable Louis H. Pollak, District Court Judge for the Eastern District
of Pennsylvania, sitting by designation.

William G. Walker, Esquire (Argued)
145 South Sixth Avenue
Tucson, AZ 85701

Carol S. Rosenbloom, Esquire
Carol Rosenbloom Associates
5530 Walnut Street
Pittsburgh, PA 15232
    Counsel for Valerie Renda:
        Appellee in 01-2421 & Appellant
        in 01-2498

D. Michael Fisher
Attorney General

Kemal Alexander Mericli (Argued)
Senior Deputy Attorney General

Rodney M. Torbic
Senior Deputy Attorney General

Calvin R. Koons
Senior Deputy Attorney General

John G. Knorr, III
Chief Deputy Attorney General
Appellate Litigation Section
Office of Attorney General
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219
    Counsel for Paul King:
        Appellant in 01-2421 & Appellee
        in 01-2498;
    and David B. Kelsey:
        Appellee in 01-2498

## OPINION OF THE COURT

ROTH, *Circuit Judge*:

In this appeal, defendant Trooper Paul King contends that the District Court abused its discretion in excluding evidence of his good character for truthfulness and that the

jury's verdict against him and in favor of plaintiff Valerie Renda[1] is irreconcilable with its verdict against Renda and in favor of co-defendant Corporal David Kelsey. As discussed below, we conclude that the District Court abused its discretion in excluding evidence of King's good character for truthfulness because Renda opened the door for such evidence when she argued that King was corrupt in his conduct of an official police investigation. Since we will remand for a new trial as to Trooper King on this ground, there is no need to address his argument that the jury's verdict was inconsistent.

Plaintiff Valerie Renda cross-appealed on the ground that the District Court abused its discretion in denying her motion to vacate the grant of summary judgment to defendants King and Kelsey on her claim that they violated her constitutional rights under 42 U.S.C. § 1983 by engaging in a custodial interrogation opinion without providing warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). As discussed below, we conclude that the District Court did not abuse its discretion in denying Renda's motion to vacate. The Supreme Court's recent holding in *Chavez v. Martinez*, ___ U.S. ___, 123 S.Ct. 1994 (2003) reaffirms our holding in *Giuffre v. Bissell*, 31 F.3d 1241 (3d Cir. 1994) that a plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing *Miranda* warnings when there is no claim that the plaintiff's answers were used against her at trial.[2]

## I.  Facts and Procedural History

This case began with a domestic dispute between Renda and her boyfriend Joe Sonafelt, a Pennsylvania State Trooper. In May 1995, Renda was living with Trooper Sonafelt and their two year old son, Joe, Jr., in Lower

---

1. At trial, plaintiff went by her maiden name, Krah, rather than her married name, Renda.

2. As we state in footnote 4, there is no issue here that the nature of defendants' interrogation of Renda violated the Due Process Clause because Renda did not appeal the dismissal of her Fourteenth Amendment Due Process claim.

Burrel, Pennsylvania. On May 15, Renda left Sonafelt and, together with her son went to the apartment of her friend Tina Stone. Sonafelt called the local police, claiming that Renda had abducted their son in violation of a custody order. The local police then contacted the Pennsylvania State Police. Defendant Kelsey, a Pennsylvania State Police Corporal, determined that the complaint, along with a complaint from Renda that Sonafelt had kicked her in the back on May 14, would be handled by the Pennsylvania State Police. Corporal Kelsey assigned the matter to defendant King, a Pennsylvania State Police Trooper.

Trooper King contacted Renda by telephone on the night of May 15. She told him that Sonafelt had slammed her into a wall at their residence earlier that day during an argument. Renda also indicated that she did not want to give a statement or file charges and that she wanted to be left alone. Based on Renda's allegations of domestic abuse, Trooper King conducted a tape recorded interrogation of Trooper Sonafelt at approximately 10:00 p.m. at the station house. Trooper King provided *Miranda* warnings, and Trooper Sonafelt waived his rights.

Despite an earlier request that the police not interview her, at 2:30 a.m. on May 16, Trooper King and Corporal Kelsey conducted an in-person interview of Renda at Stone's apartment. They did not provide *Miranda* warnings to Renda, but she gave them a written statement. The statement did not mention the assault of May 15 that she had reported earlier that evening. King and Kelsey both testified at trial that, when they asked Renda why she did not mention the incident, she responded that she did not include the allegation in the written statement because she had lied about it earlier on the telephone. Renda on the other hand testified at trial that the alleged May 15 assault did occur and that she never told King and Kelsey that she had lied. She testified that she did not mention the May 15 incident in the written statement because she did not want to file a complaint against Sonafelt nor did she want him to go to prison. She stated that she provided the written statement because King and Kelsey threatened her.

On June 7, 1995, Trooper King filed a charge of giving false reports to law enforcement authorities against Renda

and obtained an arrest warrant. The local police in Altoona, Pennsylvania, arrested Renda at her place of employment. She was arraigned and bond was set at $10,000. She was incarcerated at Westmoreland County Jail until June 20, at which point she was released on her own recognizance. On August 28, 1996, the Court of Common Pleas, Westmoreland County, suppressed any statements from the morning of May 16, 1995, because defendants had not provided plaintiff *Miranda* warnings prior to the custodial interrogation. The case was nolle prossed by the District Attorney of Westmoreland County because of the evidence problems.

Renda then filed this § 1983 civil action alleging that King and Kelsey violated her constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments when they subjected her to a coercive interrogation; she also claimed that she was interrogated without *Miranda* warnings and subjected to an unlawful search, arrest, imprisonment, and malicious prosecution. Defendants moved for summary judgment on all of Renda's claims, except the allegation of coercive interrogation. On May 14, 1999, the District Court granted the motion on Renda's First Amendment, false arrest, false imprisonment, and *Miranda* warnings claims but denied the motion as to the rest. A jury trial followed on plaintiff's malicious prosecution and coerced interrogation claims. During the trial, the District Court dismissed the coerced interrogation claim. The jury returned a verdict on the malicious prosecution claim, finding against Trooper King and in favor of Renda in the amount of $80,000, and against Renda and in favor of Corporal Kelsey.

Renda then moved for relief from the judgment relating to her *Miranda* claim. The District Court denied the motion on July 17, 2000.

A separate trial was held on the punitive damages issue. The jury could not reach a decision, and a mistrial was declared. The District Court ordered a new trial on the punitive damages issue. On May 21, 2001, pursuant to an agreement by the parties, the District Court dismissed the punitive damages claim. Trooper King appealed, and Renda filed a cross-appeal.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction over this federal civil rights action pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291. While District Court interpretations of the Federal Rules of Evidence are subject to plenary review, rulings to admit or exclude evidence are reviewed for an abuse of discretion if they are based on a permissible interpretation of the Federal Rules of Evidence. *See United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000). Since the issue in the present case is the District Court's application of Rule 608, rather than its interpretation of Rule 608, we review that ruling for an abuse of discretion. *See Johnson v. Elk Lake School District*, 283 F.3d 138, 145 n. 2 (3d Cir. 2002). We review denials of motions for relief from judgment for abuse of discretion. *See Resolution Trust Corp. v. Forest Grove*, 33 F.3d 284, 288 (3d Cir. 1994).

## III.  Discussion

1. *Exclusion of Evidence Regarding Trooper King's Good Character for Truthfulness*:

Generally, evidence of a person's character is not admissible for the purpose of proving action in conformity therewith. *See* Fed. R. Evid. 404(a). However, evidence of a witness's good character for truthfulness is admissible under some circumstances to show that the witness is acting in conformity with that character for truthfulness when testifying in the particular case. *See id.* Those circumstances are that

> (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Fed. R. Evid. 608(a). Evidence of a witness's good character for truthfulness is not admissible absent an attack on the witness's character for truthfulness due to the cost of engaging in a fruitless "swearing match," particularly in light of the fact that a witness is presumed to tell the truth

until his character for truthfulness is attacked. *See* 3 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 269 (2d ed. 1994); 4 John Henry Wigmore, *Evidence in Trials at Common Law* § 1104 (Chadbourn rev. 1972).

Under Rule 608(a), whether a witness's credibility has been attacked depends on the nature of the opponent's impeaching evidence. *See United States v. Dring*, 930 F.2d 687, 690-91 (9th Cir. 1991); 4 Wigmore § 1104. Direct attacks on a witness's veracity in the particular case do not open the door for evidence of the witness's good character. *See Dring*, 930 F.2d at 690. For example, evidence of bias or prior inconsistent statements generally does not open the door for evidence of good character for truthfulness. *See Dring*, 930 F.2d at 691; 4 Wigmore §§ 1104, 1105. The reason that evidence of bias does not open the door for evidence of good character for truthfulness is because evidence of bias only relates to a motive to lie in the particular case, not a general predisposition to lie. *See United States v. Medical Therapy Sciences, Inc.*, 583 F.2d 36, 41 (2d Cir. 1978); 3 Mueller and Kirkpatrick § 270; 4 Wigmore § 1107. Similarly, prior inconsistent statements do not open the door for evidence of good character for truthfulness because there can be a number of reasons for the error, such as defects in knowledge or memory, a bias or interest to lie in this particular instance, or a general character trait for untruthfulness. *See* 3 Mueller and Kirkpatrick § 270; 4 Wigmore § 1108. Thus, although the inconsistency may be due to a dishonest character, it is not necessarily, or even probably, due to this cause. Thus, the relatively minor value of permitting a response to such an inference does not justify the cost of litigating the tangential issue of character for truthfulness. *See id.*

In addition to direct attacks on a witness's general character for truthfulness, indirect attacks also open the door for evidence of a witness's good character for truthfulness. *See Dring*, 930 F.2d at 691. "[I]ndirect attacks on truthfulness include opinion evidence, reputation evidence, and evidence of corruption, which require the jury to infer that the witness is lying at present simply because he has lied often in the past." *Id.* As the Advisory

Committee Notes for Rule 608(a) state, "[o]pinion or reputation that the witness is untruthful specifically qualifies as an attack under the rule, and evidence of misconduct, including conviction of crime, and of corruption also fall within this category. Evidence of bias or interest does not." Fed. R. Evid. 608 Advisory Committee Notes to the 1972 Proposed Rules. The reason that an indirect attack on a witness's character for truthfulness opens the door for testimony about the witness's good character for truthfulness is because such attacks directly call into question the witness's moral character for truthfulness. *See id.* at § 1107; 3 Mueller and Kirkpatrick § 270. Likewise, "[a]n act of corruption directly affects moral character; and the corroboration should therefore depend upon the rule for acts involving character." 4 Wigmore § 1107; *see also* 3 Mueller and Kirkpatrick § 270. As the Court of Appeals for the Second Circuit held in *Medical Therapy Sciences, Inc.*:

> Some types of bias, for example bias stemming from a relationship with a party, do not necessarily involve any issue relating to the moral character of the witness, but suggest only that the witness' testimony may perhaps unwittingly be slanted for reasons unrelated to general propensity for untruthfulness. As such, character evidence is not relevant to meet such an attack. On the other hand, *alleged partiality based on hostility or self-interest may assume greater significance if it is sought to be proven by conduct rising to the level of corruption.*

583 F.2d at 41 (emphasis added).

In the present case, the District Court abused its discretion in excluding evidence of Trooper King's good character for truthfulness. Renda clearly engaged in an indirect attack on Trooper King's character for truthfulness by arguing during her opening statement that the jury should not believe Trooper King when he claimed that Renda had told him that she lied — not because of bias in this case but because he was being corrupt in his conduct of his official duties as a police officer. *See United States v. Jones*, 763 F.2d 518, 522 (2d Cir. 1985) (holding that attacks on a witness's character for truthfulness in opening

statements may qualify under the "otherwise" portion of Rule 608(a)). Renda's counsel made the following comments in the opening statement:

> So I'm here to tell you a little bit about the Plaintiff's version of the case. And, basically, what I'm here to tell you is that, in a nutshell, Valerie Krah Renda, who is the Plaintiff in this case, is basically claiming that *during the course of a police investigation,* a State Police investigation about an incident between her and a state trooper, who was at the time her boyfriend, *that these officers, these Defendants, misconducted themselves; that they maliciously harassed her; that they attempted to coerce her into making false confessions; and that when she would not do so, they filed false charges against her.* They caused her to be arrested and incarcerated and caused her to hire a lawyer and fight a criminal case against her. . . .
>
> ****
>
> . . . . And after all the evidence is in, we're going to ask that you conclude from your deliberations and from the evidence presented to you that *this young woman* was not only unfairly treated, but she *was maliciously and willfully mistreated by these officers in an attempt to help Joe Sonafelt; that they used illegal investigative techniques*; that they coerced her into talking to them on the morning of the 16th at two o'clock in the morning; they barged into her friend's house; *that they terrorized her*; that they lied about the statements that she gave; *that they caused her to be prosecuted illegally*; and that she has suffered significant damages because of that.

App. 138, 162 (emphasis added).

This argument that Trooper King would lie and engage in illegal police investigative techniques and frame an innocent person in order to help a fellow Trooper goes beyond alleging that Trooper King is biased in his testimony. It suggests that he is corrupt and improperly performed his official duties. *See Sutkiewicz v. Monroe Co. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997) (holding that it was proper for a District Court to permit a defendant to introduce evidence

of good character for truthfulness in response to allegations that the defendant withheld exculpatory information in an attempt to frame the plaintiff). Since this impeachment went beyond a claim of a simple interest in the outcome of the case and rose to the level of corruption, "counterproof of good character should no doubt be admitted." 3 Mueller and Kirkpatrick § 270.

Having determined that the District Court erred in excluding the evidence of Trooper King's good character for truthfulness does not end our inquiry; we must determine whether that error was harmless. Federal Rule of Evidence 103(a) provides that an evidentiary ruling is not reversible error "unless a substantial right of a party is affected . . . ." Fed. R. Evid. 103(a). Under this test, a reviewing court should affirm the District Court despite the error if the reviewing court believes "that it is *highly probable* that the error did not contribute to the judgment . . . ." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 924 (3d Cir. 1985) (quoting *Government of the V.I. v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976)).

In the present case, however, we do not believe that it is highly probable that the error did not affect the judgment because the central issue in the present case was the credibility of the parties. As Renda's counsel made clear in closing argument:

> The real fact for you to determine in this case, and it's the one thing that counsel and I agree on, is whether or not you believe these police officers, based on all the evidence, that on the night of May 15th and early morning of May 16th she said to those officers, "I lied, it never happened," or whether you believe, based on the circumstances that you've heard, that that statement was never made. That is the sole basis of the reason for her prosecution in this case; and if she didn't say it, then she has been maliciously prosecuted in this case.
>
> ****
>
> The statement — the most important question in this case is did she say that evening "I lied"? Now, who was there? She was there. Kelsey was there. King was

> there. Tina Stone was in the bedroom. What's the testimony that you heard? She says, "I never said it." They say she said it.

App. 1490-1493. Thus, given the significance of the issue of credibility, we do not believe that it is highly probable that the District Court's error in preventing Trooper King from responding to the plaintiff's allegations of corruption did not have an effect on the judgment. *See McQueeney*, 779 F.2d at 924, 927.

Renda argues, however, that the error was harmless because it was cumulative of other evidence. In particular, she points to testimony from Assistant District Attorney Koenig that he had an outstanding experience working with Trooper King. However, when King's counsel questioned Assistant District Attorney Koenig about his prior work experience, Renda's counsel objected, and the District Court excluded the testimony as impermissible reputation evidence. Renda also claims that the excluded evidence was cumulative of the statement by King's counsel in closing argument that Trooper King told the truth because he received subsequent promotions and increases in responsibilities that he would not have received if the Pennsylvania State Police believed that he fabricated statements. However, such speculation by a defense attorney in summation does not substitute for witness testimony regarding a person's reputation for truthfulness. We conclude, therefore, that the error in excluding testimony regarding Trooper King's good character for truthfulness was not harmless.

2. *Miranda Claim*:

The District Court did not abuse its discretion in denying Renda's motion to vacate the District Court's grant of partial summary judgment to King and Kelsey on Renda's *Miranda* claim. In order to recover under § 1983, a plaintiff must show that the defendant, under color of state law, subjected the plaintiff to a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States. *See* 42 U.S.C. § 1983. One of the constitutional rights that Renda claims the defendants violated is her right under *Miranda* to be free from custodial interrogation.

In *Miranda*, the Supreme Court held that the Self-Incrimination Clause of the Fifth Amendment prohibits a prosecutor from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Absent equally effective means, these procedural safeguards are that a person be warned prior to custodial interrogation of his right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be provided to him. *See id.* at 479. If, after receiving these warnings, the person knowingly and intelligently waives these rights and provides a statement, that statement can be used against the person in a criminal proceeding. *See id.*

The District Court granted defendants summary judgment on Renda's *Miranda* claim based on our decision in *Giuffre*, 31 F.3d at 1256. In *Giuffre*, we held that a plaintiff may not base a § 1983 claim on the mere fact that the police questioned the plaintiff in custody without providing *Miranda* warnings where there is no claim that the statements obtained in violation of *Miranda* were used against the plaintiff because:

> violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself. The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the "right to counsel" during custodial interrogation recognized in *Miranda* is merely a procedural safeguard, and not a substantive right.

*Id.* (citations omitted).

In her motion to vacate this judgment, Renda argued that the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), which was decided after the grant of summary judgment, overruled *Giuffre* and justified reconsideration of the grant of summary judgment under Federal Rule of Civil Procedure 60(b)(6). In *Dickerson*, the

Supreme Court held that Congress may not supersede *Miranda* by passing a statute that lessens the procedural protections enunciated in *Miranda* because "*Miranda* announced a constitutional rule that Congress may not supersede legislatively." *Id.* at 444.

However, in light of the Supreme Court's recent decision in *Chavez*, it is clear that *Giuffre* still is good law following *Dickerson*, and that the District Court properly ruled that questioning a plaintiff in custody without providing *Miranda* warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against her at trial. The issue in *Chavez* was similar to the present case. In *Chavez*, the police questioned Martinez without providing *Miranda* warnings. Martinez was never charged with a crime, and his answers were never used against him in a criminal prosecution. Martinez then brought a § 1983 claim against the officers alleging that the mere fact that the police questioned him in custody without providing *Miranda* warnings constituted a constitutional violation that could serve as the basis of a § 1983 claim.

*Chavez* produced a split decision. However, six Justices (Chief Justice Rehnquist, together with Justices Thomas, O'Connor, Scalia, Souter, and Breyer) agreed that mere custodial interrogation absent *Miranda* warnings is not a basis for a § 1983 claim.[3] Justice Thomas, joined by Chief Justice Rehnquist and Justices O'Connor and Scalia, held that the "failure to read *Miranda* warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action." *Id.* at 2004. Justice Thomas reasoned that *Miranda* is a prophylactic rule intended to safeguard the right protected by the Self-Incrimination Clause (namely not to be compelled to be a witness against oneself in any criminal case), and that rules designed to safeguard constitutional rights do not expand the scope of

---

3. Justice Kennedy, joined by Justices Stevens and Ginsburg, concluded that the use of compulsion to extract a statement from a suspect violates the Self Incrimination Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. *See Martinez*, 123 S.Ct. at 2013-2018. Justice Stevens, writing separately, concluded that the police violated both the Fifth and Fourteenth Amendments. *See id.* at 2011.

the constitutional rights themselves. *See id.* Justice Souter, joined by Justice Breyer, agreed that a § 1983 claim cannot be brought for violating the Fifth Amendment by questioning a person in custody without providing *Miranda* warnings. *See id.* at 2006-08.[4] Justice Souter stated that "I do not . . . believe that Martinez can make the 'powerful showing,' subject to a realistic assessment of costs and risks, necessary to expand protection of the privilege against compelled self-incrimination to the point of the civil liability he asks us to recognize here." *Id.* at 2007.

One factual difference between *Chavez* and the present case is that Martinez never was charged with a crime while Renda was charged but had those charges dropped after the District Court suppressed the statements obtained in violation of *Miranda*. Thus, unlike in *Chavez*, Renda's statement was used in a criminal case in one sense (*i.e.*, to develop probable cause sufficient to charge her). To the extent that *Chavez* leaves open the issue of when a statement is used at a criminal proceeding, *see id.* at 2000-2001 (Thomas, J.) ("We need not decide today the precise moment when a 'criminal case' commences . . . ."), our prior decision in *Giuffre* compels the conclusion that it is

---

4. Chief Justice Rehnquist together with Justices Thomas, Scalia, Souter, and Breyer disagreed over whether to remand the case for a determination of if Martinez could prove a § 1983 claim based on the police's violation of his Fourteenth Amendment Due Process rights by obtaining evidence through a method that was so brutal and offensive to human dignity as to "shock the conscience." *Martinez*, 123 S.Ct. at 2005. Justice Thomas, joined by Chief Justice Rehnquist and Justice Scalia, concluded that the police interrogation, which involved questioning Martinez while in the hospital receiving treatment for a gun shot wound, did not violate Martinez's due process rights. *See id.* at 2005-06. Justice O'Connor did not join Justice Thomas in this portion of his opinion. *See id.* at 1999. Justice Souter delivered the opinion of the Court on this issue. He concluded that remand was required to determine the merits of this claim. *See id.* at 2008. In addition to Justice Breyer, who joined Justice Souter as to his entire opinion, Justices Stevens, Kennedy, and Ginsburg joined as to this portion of the opinion. *See id.* at 2006. In the present case, however, we need not address whether defendants' questioning of Renda violated the Due Process Clause. Because Renda did not appeal the dismissal of her Fourteenth Amendment Due Process claim, that issue is not before us.

the use of coerced statements during a criminal trial, and not in obtaining an indictment, that violates the Constitution. *See* 31 F.3d at 1256. In *Giuffre*, as in the present case, the police used statements allegedly obtained from a custodial interrogation where the plaintiff was not properly warned of his *Miranda* rights as a basis for filing criminal charges, but those charges were later dropped. *See id.* at 1250-51. Under these circumstances, we held that Giuffre's constitutional right against self-incrimination was not violated. *See id.* at 1256. The same conclusion applies here.

## IV. Conclusion

For the reasons stated above, the judgment of the District Court will be vacated as to the judgment against defendant King on the malicious prosecution claim and the case remanded to the District Court for a new trial on that claim against him. The remainder of the judgment of the District Court will be affirmed.

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*