

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2009

# Coney v. NPR Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3771

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Coney v. NPR Inc" (2009). *2009 Decisions.* Paper 1838.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1838

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3771
_____

MICHAEL CONEY;
THERESA CONEY, H/W,
                                        Appellants

v.

NPR, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-01324)
Magistrate Judge:  Honorable David R. Strawbridge
_____

Submitted Under Third Circuit LAR 34.1(a)
January 9, 2009

Before:  FUENTES, FISHER and ALDISERT, *Circuit Judges*.

(Filed: February 23, 2009)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This appeal involves a longshoreman's personal injury action against defendant shipowner, NPR, Inc. Plaintiffs Michael Coney and Theresa Coney[1] raise three issues on appeal concerning the District Court's[2] jury instructions, its exclusion of certain expert testimony, and its refusal to excuse a juror. For the reasons set forth below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Michael Coney filed a personal injury suit against NPR under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b),[3] in the District Court for the Eastern District of Pennsylvania. Coney alleged that he injured his back while working as a longshoreman on NPR's vessel, the S.S. Humacao, claiming that his injury occurred

---

[1]Theresa Coney's claim involves loss of consortium, which is not relevant to the issues raised in this appeal. We therefore refer only to Michael Coney in this opinion.

[2]This case was tried before Magistrate Judge David R. Strawbridge. We refer to the Magistrate Judge as the District Court in this opinion.

[3]Section 905(b) permits a longshoreman who is injured while working on a ship to bring a negligence action against the shipowner. *Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 407 (3d Cir. 2006).

when his foot became trapped under a section of the vessel's grated metal walkway due to a defective angle iron on the walkway.

Trial began on September 13, 2006. During voir dire, the District Court asked prospective jurors whether anyone had "suffered from a back injury" and, if so, whether that injury would influence their ability to be impartial in deciding the case. Juror Number 1 did not volunteer a response to either question, but during the trial, he informed the District Court that he had previously been diagnosed with degenerative disc disease. At sidebar, he explained that he did not respond to the District Court's questioning about back injuries during voir dire because his back condition did not result from a specific injury. The District Court then questioned him to ensure that his condition would not affect his impartiality in deciding the case. Following that colloquy, Coney moved to have Juror Number 1 excused and the District Court, satisfied with the juror's responses, denied Coney's motion.

During Coney's case-in-chief, he introduced the video testimony of Dr. John Park, a specialist in anesthesiology and pain management who treated Coney. In response to certain objections raised by NPR, however, the District Court ruled that portions of the video testimony concerning Dr. Park's opinion about Coney's honesty and reliability were inadmissible. Specifically, the District Court disallowed Coney from asking Dr. Park how he knew that Coney's complaints of pain were "honest," what his opinion was "concerning the accuracy of Mr. Coney's complaints of pain," and whether he found "Mr.

3

Coney's complaints of pain reliable." Nor did the District Court allow Dr. Park to testify that Coney "is being completely honest and his complaints and his history are 100 per cent reliable." (App. 1433a-35a, 1438a-39a.)

At the conclusion of the evidence, the District Court instructed the jury, *inter alia*, on the "turnover duty," which the Court indicated was the applicable duty of care owed by a shipowner to a longshoreman.[4] Coney had previously objected to the District Court's inclusion of a paragraph in its turnover duty charge involving the shipowner's responsibility for obvious hazards, but the District Court overruled the objection and gave the instruction.

The jury was then provided with a verdict sheet that asked whether NPR was negligent and, if so, whether that negligence caused harm to Coney. On September 22, 2006, the jury answered "no" to the first question and consequently returned a verdict in favor of NPR. The District Court entered judgment in favor of NPR and against Coney. On August 31, 2007, the District Court denied Coney's motion and supplemental motion for a new trial, *see Coney v. NPR, Inc.*, No. 03-1324, 2007 WL 2571452 (E.D. Pa. Aug. 31, 2007), and Coney timely appealed.

---

[4]There are "at least three distinct duties that a shipowner owes a stevedore (and its longshore employees)": the turnover duty, the active operations duty, and the duty to intervene. *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 537 (3d Cir. 1994) (discussing *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981)). Coney does not contest that the turnover duty is the duty at issue in this case, noting specifically in his brief that "[t]his case involves the vessel's turnover duties."

4

II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332, and we have jurisdiction under 28 U.S.C. § 1291.[5]

This appeal involves the District Court's instruction to the jury regarding the turnover duty, its exclusion of certain portions of Dr. Park's testimony, and its refusal to excuse Juror Number 1. Where a party challenges the legal correctness of jury instructions, our review is plenary, *Hill v. Reederei F. Laeisz G.M.B.H.*, 435 F.3d 404, 408 (3d Cir. 2006), but otherwise "we review the trial court's expression for abuse of discretion." *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (en banc). Where a district court's evidentiary ruling was based on an interpretation of the Federal Rules of Evidence, our review is plenary, *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 297 (3d Cir. 2007), although we "review a ruling to admit or exclude evidence, if based on a

---

[5]Although Coney's notice of appeal indicates that he appeals from the District Court's order denying his motion for a new trial, we will consider this matter as an appeal from the final judgment. *E.g.*, *Cowger v. Arnold*, 460 F.2d 219, 220 (3d Cir. 1972) ("Technically the appeal should have been from the final judgment . . . [but] since the motion for a new trial and notice of appeal were timely filed, we may and do treat this matter as an appeal from the final judgment."); *see generally* 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2818 (2d ed. 1995) ("Ordinarily an order denying a motion for a new trial is not appealable . . . [but] if an appeal is erroneously taken from the denial of that motion, rather than from the judgment, the court will treat the appeal as being from the judgment."). To the extent that Coney argues the District Court abused its discretion by denying his motion for a new trial, for the reasons discussed herein we find no error in the District Court's rulings at issue on appeal and, therefore, no abuse of discretion. *See Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992).

5

permissible interpretation of those rules, for abuse of discretion." *United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000). We review a district court's refusal to excuse a juror for abuse of discretion. *See United States v. Hodge*, 321 F.3d 429, 440 (3d Cir. 2003); *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 153 (3d Cir. 1995).

We now turn to the issues raised on appeal.

III.

A.

Coney first attacks the District Court's jury instructions pertaining to the shipowner's turnover duty, taking contention with three sentences of the turnover duty charge. Here is the challenged portion:

> However, under this duty, the vessel or NPR, need not supervise or inspect the stevedoring operation to discover and correct dangerous conditions which develop within the cargo areas as a result of those operations. So the shipowner could ordinarily reasonably rely upon the stevedore and his longshore employee to notice obvious hazards, to take steps consistent with its expertise, to avoid those hazards where practical to do so. A shipowner may be liable for failing to eliminate an eliminable hazard only if it should have expected that its expert stevedore would not avoid the hazard or conduct cargo operations safely.

(App. 1266a.) Coney asserts that it was error to give this instruction because his theory at trial was that "there was a hidden defect within the grating support system" and thus the District Court's reference to "cargo areas" and "obvious hazards," without further explanation, was misleading. According to Coney, this instruction gave the false impression that "the shipowner was relieved of its continuing duty to inspect for and

6

correct hidden and non-obvious dangers because cargo operations had commenced in these common and non-cargo areas." Having considered Coney's arguments, we cannot agree that this paragraph was capable of misleading the jury in this case.

Jury instructions must be "considered as a whole to determine whether they are misleading or inadequate," *Savarese v. Agriss*, 883 F.2d 1194, 1202 (3d Cir. 1989), and we must "not limit ourselves to particular sentences or paragraphs in isolation." *United States v. Johnstone*, 107 F.3d 200, 204 (3d Cir. 1997). Where "the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury," there is no reversible error. *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 922 (3d Cir. 1986) (internal quotation marks and citations omitted).

Here, the District Court's instruction on the turnover duty largely tracked the Supreme Court's formulation in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166-67 (1981), and our discussion of the duty in *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 537 (3d Cir. 1994), and *Kirsch v. Plovidba*, 971 F.2d 1026, 1030, 1033 (3d Cir. 1992). In fact, the portion of the charge that Coney attacks reflects language we used in *Davis* to distinguish the turnover duty from the active operations duty and in *Kirsch* to discuss the obvious-hazard aspect of the turnover duty. *See Davis*, 16 F.3d at 537 (stating that under the turnover duty, "the vessel need not supervise or inspect the stevedoring operation to discover and correct dangerous conditions which develop within the cargo areas as a result of those operations" (citing

7

*Scindia*, 451 U.S. at 168-69)); *Kirsch*, 971 F.2d at 1030, 1033 ("[A] shipowner can, ordinarily, reasonably rely on the stevedore (and its longshore employees) to notice obvious hazards and to take steps consistent with its expertise to avoid those hazards where practical to do so. . . . [A] shipowner may be liable for failing to eliminate an eliminable obvious hazard only if it should have expected that its expert stevedore would not avoid the hazard and conduct cargo operations safely.").

Nevertheless, Coney seeks to capitalize on our decision in *Hill*, where we found reversible error based on the district court's legally insufficient turnover duty instruction and noted the "difficult undertaking" of "[t]ranslating appellate opinions into jury instructions" and the importance of "precise articulation of the turnover duty." 435 F.3d at 408-09. But in *Hill* we determined that the jury instructions were erroneous because they accounted for only one of the "two components to the rule on open and obvious hazards under *Kirsch*." *Id.* at 409. In this case, the District Court's instruction encompassed the full passage from *Kirsch* which, as we concluded in *Hill*, is one of "the relevant turnover rules as developed in our caselaw." *Id.* at 412.[6]

---

[6]In *Hill*, we found "it advisable to restate the relevant turnover rules" in an effort "to assist future District Courts in crafting turnover duty instructions." 435 F.3d at 411-12. And in doing so, we stated that the turnover duty "includes mitigating open and obvious hazards if the ship reasonably should know that longshoremen either (a) are likely to work through them rather than mitigating them, or (b) are unable to mitigate them through practical measures," *id.* at 412, echoing *Kirsch*'s statement of the law that the District Court adopted in its jury instructions here.

While we are unsure of the wisdom of so starkly juxtaposing the language from these separate cases, the District Court repeatedly emphasized the general contours of the turnover duty in its instructions, and thus clearly accommodated Coney's theory of the case. Notably, immediately before the challenged instruction, the District Court stated:

> The shipowner thus has this duty with respect to the ship's gear, equipment, tools, work space, to be used in the stevedoring operations. And if he, that is the shipowner, fails to at least warn the stevedore of any hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to the longshoreman.

(App. 1265a-66a.) And immediately after the challenged instruction, the District Court stated:

> Thus, if the conditions existing when the longshore workers began to work on board the ship, at the turnover time, is a condition that an expert, an experienced stevedore would not by the exercise of reasonable care be able to carry on its cargo operations safely to persons and property, you may find that the defendant has breached its duty of care to plaintiff . . . .

(App. 1266a.) After the District Court outlined several factors that, if proven, may lead to a finding of liability, it continued:

> Essentially if the shipowner fails to warn the stevedoring company or the stevedore or longshoreman of such dangerous condition that would have been known in the existence of reasonable care, then it has breached its duty and is liable, that is to say it would be liable if this negligence, its negligence caused the injury to the plaintiff.

(App. 1267a.) We disagree with Coney that the challenged instruction "overshadowed and nullified" these aspects of the charge, which he acknowledges on appeal "accurately relate the relevant principles of law." Indeed, the District Court informed the jury that it

9

should not "single out one instruction alone as stating the law," but instead "must consider all the instructions together as a whole." (App. 1254a); *cf. Zehrbach*, 47 F.3d at 1264 (finding that a jury instruction was not capable of misleading after taking into account, *inter alia*, the placement of the challenged instruction, the district court's continuous reinforcement of the relevant legal principle, and the instruction to the jury to consider the charge in its entirety). Accordingly, given the evidence presented at trial and viewing the challenged instruction in the context of the entire charge, the instructions as a whole fairly and adequately presented the case to the jury.

B.

Coney also submits that the District Court erred by excluding portions of Dr. Park's testimony concerning Coney's honesty and reliability. Coney maintains that this testimony was necessary to combat the testimony of NPR's medical expert regarding Coney's physical complaints. We conclude that the District Court acted within its discretion.

A district court is afforded considerable latitude "in its determination to admit and exclude evidence, and this is particularly true in the case of expert testimony." *Hamling v. United States*, 418 U.S. 87, 108 (1974). The District Court here acknowledged that "a physician's consideration of his patient's subjective complaints of pain is important as it may play a part in forming the basis of his opinion." *Coney*, 2007 WL 2571452, at *10. Indeed, the record indicates that Dr. Park expressed his reliance on Coney's subjective

10

complaints in forming his diagnosis. Yet as the District Court also recognized, "[t]his does not mean . . . that Dr. Park should have been able to testify more broadly as to his opinion concerning the truthfulness and reliability of Coney's complaints." *Id.*; *see*, *e.g.*, *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) ("[T]he credibility of witnesses is generally not an appropriate subject for expert testimony.") (internal quotation marks and citations omitted); *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996) ("Absent unusual circumstances, expert medical testimony concerning the truthfulness or credibility of a witness is inadmissible . . . because it invades the jury's province to make credibility determinations."); *United States v. Whitted*, 11 F.3d 782, 785-86 (8th Cir. 1993) ("A doctor . . . cannot pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility."); *United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982) (en banc) ("Credibility determinations are for the jury.").

We find Coney's reliance on Federal Rule of Evidence 608 to be misplaced. Rule 608 allows opinion or reputation evidence of a witness's truthful character to be admitted "only after" that witness's character for truthfulness has been attacked. Fed. R. Evid. 608(a)(2). Coney argues that the District Court should have admitted Dr. Park's testimony bolstering his credibility because the defense expert "was going to" give a negative opinion about Coney's medical complaints. But Coney introduced Dr. Park's testimony before the defense medical expert testified at trial. We reject Coney's

11

argument that NPR's use of prior inconsistent statements during his cross-examination rose to the level of an attack on his character for truthfulness. *See*, *e.g.*, *Renda v. King*, 347 F.3d 550, 554 (3d Cir. 2003) (Generally, "prior inconsistent statements do not open the door for evidence of good character for truthfulness because there can be a number of reasons for the error, such as defects in knowledge or memory, a bias or interest to lie in this particular instance, or a general character trait for untruthfulness."); *United States v. Dring*, 930 F.2d 687, 691 & n.5 (9th Cir. 1991) (stating that "[e]ven where an attorney points out inconsistencies to attack a witness's truthfulness, the attack is direct and relevant because it focuses on the credibility of the witness in the present case without relying on prior acts of corruption or bad character" and thus "does not . . . trigger rehabilitation" under Rule 608(a)) (emphasis omitted).[7] Therefore, we find no reason to disturb the District Court's evidentiary ruling.

## C.

Finally, Coney asserts that the District Court erred by refusing to excuse Juror Number 1 after the juror, who did not volunteer a response about back injuries during voir dire, informed the Court during trial that he suffered from degenerative disc disease. We are unpersuaded by Coney's argument.

---

[7]Granted, a particularly "slashing cross-examination" that "carr[ies] strong accusations of misconduct and bad character" might, in certain circumstances, trigger Rule 608(a) rehabilitation. *Dring*, 930 F.3d at 692; *accord United States v. Murray*, 103 F.3d 310, 321 (3d Cir. 1997). However, given the record in this case, we cannot reach such a conclusion here.

12

Where a juror fails to disclose information during voir dire, the party seeking a new trial based on juror impartiality must "demonstrate that [the] juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Hodge*, 321 F.3d at 441 (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)) (internal quotation marks omitted). We agree with the District Court that the record reflects that Juror Number 1 "considered the questions put to the jury panel carefully" and that "his position concerning the distinction between a back injury and a degenerative condition was careful and precise." *Coney*, 2007 WL 2571452, at *6 (emphasis omitted). Moreover, the District Court, having the advantage of observing the juror's demeanor, determined "that he was a particularly conscientious, careful and credible juror who undertook his obligations seriously." *Id.* at *7; *see*, *e.g.*, *United States v. Salamone*, 800 F.2d 1216, 1226 (3d Cir. 1986) ("[T]he factual determination by the trial court whether a juror can in fact serve impartially is entitled to special deference by the reviewing court.") (internal quotation marks and citations omitted). Based on our review of the District Court's colloquy with Juror Number 1, we do not believe that the District Court abused its discretion by denying Coney's motion to excuse the juror.

IV.

For the foregoing reasons, the order denying Coney's motion and supplemental motion for a new trial and the judgment of the District Court will be affirmed.

13